LAW OFFICES OF

# STEFAN COLEMAN, P.A.

201 S Biscayne Blvd, 28th Floor, Miami, FL 33131
1072 Madison Ave, Ste 1, Lakewood, NJ 08701
5 Penn Plaza, 23rd Floor, New York, NY 10001

PHONE (877) 333-9427 | FAX (888) 498-8946                           NEW YORK | NEW JERSEY | FLORIDA
EMAIL: BLAKE@STEFANCOLEMAN.COM                                       WEB: CLASSACTION.WS

July 19, 2017

<u>*VIA ECF*</u>

Hon. John Michael Vasquez
United States District Court
New Jersey District Court

   **Re:** *Hale v. Creditors Relief* **(2:17-cv-02447)**

Judge Vasquez:

  Plaintiff respectfully notifies the court of a recent decision in the Third Circuit by Judge Peter G. Sheridan on July 10, 2017 dealing with a central issue of Defendant's Motion to Dismiss.

  That case dealt with whether one unauthorized telephone call created standing for the named plaintiff and the class in light of *Spokeo v. Robbins,* 136 S. Ct. 1540 (2016). Judge Peter G. Sheridan of the Third Circuit held that he "agreed with the plaintiff that "in asserting 'nuisance and invasion of privacy' resulting from a single prerecorded telephone call, [the plaintiff's] complaint asserts 'the very harm that Congress sought to prevent,' arising from prototypical conduct proscribed by the TCPA." He continued, "Congress "elevated a harm that, while 'previously inadequate in law,' was of the same character of previously existing 'legally cognizable injuries.' *Spokeo* addressed, and approved, such a choice by Congress."

  Plaintiff respectfully notifies this Court of the attached case.

                  */s/ Blake J. Dugger*

                  Blake J. Dugger, Esq.
                  Law Offices of Stefan Coleman, P.A.

LAW OFFICES OF
STEFAN COLEMAN, P.A.

201 S Biscayne Blvd, 28th Floor, Miami, FL 33131
1072 Madison Ave, Ste 1, Lakewood, NJ 08701
5 Penn Plaza, 23rd Floor, New York, NY 10001

EXHIBIT A

PRECEDENTIAL

# UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

No. 16-3277

NOREEN SUSINNO,
individually and on behalf of all others similarly situated,
Appellant

v.

WORK OUT WORLD INC.;
JOHN DOES 1–25

On Appeal from the United States District Court
for the District of New Jersey
(D.N.J. No. 3-15-cv-05881)
District Judge: Honorable Peter G. Sheridan

Argued March 8, 2017
Before: HARDIMAN and KRAUSE, *Circuit Judges*,
and STENGEL, *District Judge*.\*

(Filed: July 10, 2017)

Keith J. Keogh
Timothy J. Sostrin    [Argued]
Keogh Law
55 West Monroe Street, Suite 3390
Chicago, IL 60603

Yitzchak Zelman
Ari H. Marcus
Marcus & Zelman
1500 Allaire Avenue, Suite 101
Ocean, NJ 07712
    *Counsel for Appellant*

Joshua S. Bauchner    [Argued]
Michael H. Ansell
Ansell Grimm & Aaron
365 Rifle Camp Road
Woodland Park, NJ 07424
    *Counsel for Appellees*

---

\* The Honorable Lawrence F. Stengel, United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

2

Andrew J. Pincus     [Argued]
Mayer Brown
1999 K Street, N.W.
Washington, DC 20006
    *Counsel for Amicus Chamber of Commerce in Support of Appellees*

Brian Melendez
Dykema Gossett
4000 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402
    *Counsel for Amicus ACA International in Support of Appellees*

OPINION OF THE COURT

HARDIMAN, *Circuit Judge.*

Noreen Susinno appeals the District Court's order dismissing her Telephone Consumer Protection Act (TCPA) claim against Work Out World Inc. for lack of subject matter jurisdiction. Because the TCPA provides Susinno with a cause of action, and her alleged injury is concrete, we will reverse the order of the District Court and remand for further proceedings.

I

Susinno alleged that on July 28, 2015, she received an unsolicited call on her cell phone from a fitness company called Work Out World (WOW). Susinno did not answer the

3

call, so WOW left a prerecorded promotional offer that lasted one minute on her voicemail.

Susinno filed a complaint in the United States District Court for the District of New Jersey claiming WOW's phone call and message violated the TCPA's prohibition of prerecorded calls to cellular telephones, 47 U.S.C. § 227(b)(1)(A)(iii). WOW moved to dismiss Susinno's complaint for lack of subject matter jurisdiction.

The District Court granted WOW's motion to dismiss. Its decision was based on two conclusions: (1) a single solicitation was not "the type of case that Congress was trying to protect people against," App. 38, and (2) Susinno's receipt of the call and voicemail caused her no concrete injury. Susinno filed this timely appeal.

II

The District Court had jurisdiction under 28 U.S.C. § 1331. We have appellate jurisdiction under 28 U.S.C. § 1291.

Our review of an order dismissing a complaint for lack of subject matter jurisdiction is plenary, *McCann v. Newman Irrevocable Tr.*, 458 F.3d 281, 286 (3d Cir. 2006), as is our review of questions of statutory interpretation, *United States v. Zavrel*, 384 F.3d 130, 132 (3d Cir. 2004). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

4

## III

This appeal poses two distinct questions: Does the TCPA prohibit the conduct alleged by Susinno? And if it does, is the harm alleged sufficiently concrete for Susinno to have standing to sue under Article III of the United States Constitution?

### A

The TCPA provides consumers with a private right of action for certain prohibited uses of automated telephone equipment. 47 U.S.C. § 227(b)(3). WOW argues that the TCPA does not prohibit a single prerecorded call to a cell phone if the phone's owner was not charged for the call. Susinno claims that it does.

"As in all cases of statutory interpretation, our inquiry begins with the language of the statute and focuses on Congress' intent." *United States v. Abbott*, 574 F.3d 203, 206 (3d Cir. 2009). The relevant text of the TCPA reads:

> It shall be unlawful for any person within the United States . . .
>
> > (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . .
> >
> > > (iii) to any telephone number assigned to a paging service, cellular telephone service,

5

> specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call . . . .

47 U.S.C. § 227(b)(1).

WOW argues that the structure of this provision limits the scope of "cellular telephone service" to cell phone services where "the called party is charged for the call." WOW Br. 15 (emphasis omitted) (quoting 47 U.S.C. § 227(b)(1)(A)(iii)). According to WOW, when Congress prohibited prerecorded calls to cell phones in the TCPA, it primarily was concerned with the cost of those calls. *See* WOW Br. 2, 4–5 (quoting the House and Senate reports for the TCPA).

WOW's reading of section 227(b)(1) is strained. As the Court of Appeals for the Eleventh Circuit explained: "[t]he rule of the last antecedent requires the phrase 'for which the called party is charged for the call,' [in § 227(b)(1)], 'to be applied to the words or phrase immediately preceding (i.e. "any service"), and not to be construed as extending to or including others more remote.'" *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1257 (11th Cir. 2014) (citation and alterations omitted).

But even apart from the grammatical analysis, we think another provision of the TCPA decisively rebuts WOW's reading of the statute. Section 227(b)(2)(C) provides that the Federal Communications Commission (FCC):

6

> may, by rule or order, exempt from the requirements of paragraph (1)(A)(iii) of this subsection calls to a telephone number assigned to a cellular telephone service that are not charged to the called party, subject to such conditions as the Commission may prescribe as necessary in the interest of the privacy rights this section is intended to protect.

If it were the case (as WOW suggests) that cell phone calls not charged to the recipient were not covered by the general prohibition, there would have been no need for Congress to grant the FCC discretion to exempt some of those calls. We also think it significant that this section states "calls to a [cell phone] . . . not charged to the called party" can implicate "privacy rights" that Congress "intended to protect," even if the phone's owner is not charged for the call. 47 U.S.C. § 227(b)(2)(C).

WOW notes that the statute's congressional findings refer to "residential telemarketing practices" and "calls to the home." *See* Telephone Consumer Protection Act of 1991, Pub. L. 102–243, § 2, 105 Stat. 2394 (1991). Although it is true that the TCPA placed particular emphasis on intrusions upon the privacy of the home in 1991, this expression of particular concern for residential calls does not limit—either expressly or by implication—the statute's application to cell

phone calls. Accordingly, the TCPA provides Susinno a cause of action for the conduct she alleged.[1]

### B

#### 1

We turn next to the question of whether Susinno has alleged a sufficiently concrete injury to establish constitutional standing to sue. This issue implicates the Supreme Court's recent decision in *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016). There, the Court considered Thomas Robins's claim that Spokeo, the "people search engine," violated the Fair Credit Reporting Act (FCRA) by disseminating inaccurate information about his creditworthiness. 136 S. Ct. at 1544. Spokeo stated inaccurately that Robins "is married, has children, is in his 50's, has a job, is relatively affluent, and holds a graduate degree." *Id.* at 1546. Although these inaccuracies did not have an obvious negative effect on Robins's creditworthiness, the Court of Appeals for the Ninth Circuit held that an

---

[1] Amicus ACA International argues that to impose liability under § 227(b)(1) where the cell phone's owner isn't charged for the call constitutes a violation of due process. This argument was not raised by WOW, and even if it had been, we would not find the TCPA void for vagueness where, as here, it neither "fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits," nor "authorizes or even encourages arbitrary and discriminatory enforcement." *United States v. Stevens*, 533 F.3d 218, 249 (3d Cir. 2008) (citation omitted).

individualized violation of a statutory right always constitutes an injury sufficient to confer standing. *Id.*

The Supreme Court vacated the decision of the Ninth Circuit, clarifying that "Article III standing requires a concrete injury even in the context of a statutory violation." *Id.* at 1549. Significantly for this appeal, the Court also noted that "intangible injuries can nevertheless be concrete." *Id.* To determine whether an intangible injury is concrete, the Court explained that "both history and the judgment of Congress play important roles." *Id.* As for the historical inquiry, "it is instructive to consider whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Id.* The Supreme Court also recognized that Congress may elevate certain intangible harms "to the status of legally cognizable injuries," even if those injuries "were previously inadequate in law." *Id.* (citation omitted); *see also id.* (explaining that "because Congress is well positioned to identify intangible harms that meet minimum Article III requirements, its judgment is also instructive and important," but that this "does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right").

In *In re Horizon Healthcare Services Inc. Data Breach Litigation*, 846 F.3d 625 (3d Cir. 2017), we applied *Spokeo* to a claim for inadequate protection of personal information in violation of the FCRA. Despite no allegation "that the information was actually used to [the plaintiffs'] detriment," we held that "[i]n light of the congressional decision to create a remedy for the unauthorized transfer of personal information, a violation of [the] FCRA gives rise to an injury sufficient for Article III standing purposes." *Id.* at 629.

9

While we recognized that *Spokeo* teaches that "there are some circumstances where the mere technical violation of a procedural requirement of a statute cannot, in and of itself, constitute an injury in fact," we found "no occasion to consider" the "limiting circumstances . . . not defined in *Spokeo*." *Id.* at 638. We reached this conclusion for two reasons. First, plaintiffs in *Horizon* alleged "the very injury that [the] FCRA is intended to prevent." *Id.* at 640. Second, "the 'intangible harm' that [the] FCRA seeks to remedy 'has a close relationship to a harm [i.e. invasion of privacy] that has traditionally been regarded as providing a basis for a lawsuit in English or American courts.'" *Id.* at 639–40 (alterations in original) (quoting *Spokeo*, 136 S. Ct. at 1549).[2] This close relationship existed even though the conduct alleged would not have "give[n] rise to a cause of action under common law." *Id.* at 639.

2

We summarize *Horizon*'s rule as follows. When one sues under a statute alleging "the very injury [the statute] is intended to prevent," and the injury "has a close relationship to a harm . . . traditionally . . . providing a basis for a lawsuit in English or American courts," a concrete injury has been pleaded. *Id.* at 639–40. We do not, and need not, conclude

---

[2] *Horizon* thus forecloses the argument by amicus Chamber of Commerce that *Spokeo* disallows any "claim based on privacy concerns" on the grounds that only "harms recognized *at the time of the founding* [are] sufficient to support a lawsuit." Chamber Br. 13–14 (emphasis in original).

10

that intangible injuries falling short of this standard are never concrete. *See Horizon*, 846 F.3d at 638 (declining to determine minimum standard of concreteness where unnecessary to decide case). Rather, we simply observe that all intangible injuries that meet this standard *are* concrete.

Applying *Horizon*'s standard to the facts of this appeal, we conclude that the injuries alleged by Susinno are concrete for two reasons.

First, Congress squarely identified this injury. The TCPA addresses itself directly to single prerecorded calls from cell phones, and states that its prohibition acts "in the interest of [ ] privacy rights." 47 U.S.C. § 227(b)(2)(C). The congressional findings in support of the TCPA likewise refer to complaints that "automated or prerecorded telephone calls are a nuisance [and] . . . an invasion of privacy." Pub. L. 102–243, § 2. We therefore agree with Susinno that in asserting "nuisance and invasion of privacy" resulting from a single prerecorded telephone call, her complaint asserts "the very harm that Congress sought to prevent," arising from prototypical conduct proscribed by the TCPA. App. 11 (First Amended Complaint); *see also Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1043 (9th Cir. 2017) (finding two unwanted text messages constituted a concrete injury under the TCPA, as they "present the precise harm and infringe the same privacy interests Congress sought to protect").

Having determined that the amended complaint pleaded an injury Congress aimed to prevent, we turn next to the historical inquiry. We think Susinno has satisfied this test as well. As we said in *Horizon*, a close relationship does not require that the newly proscribed conduct would "give rise to a cause of action under common law." 846 F.3d at 639. But it

11

does require that newly established causes of action protect essentially the same interests that traditional causes of action sought to protect. The Court of Appeals for the Ninth Circuit has opined that TCPA claims closely relate to traditional claims for "invasions of privacy, intrusion upon seclusion, and nuisance [which] have long been heard by American courts." *Van Patten*, 847 F.3d at 1043. In our view, intrusion upon seclusion best fits the facts of this case.

Traditionally, a plaintiff's "privacy is invaded" for the purpose of an intrusion upon seclusion claim by telephone calls "only when [such] calls are repeated with such persistence and frequency as to amount to . . . hounding." Intrusion upon Seclusion, Restatement (Second) of Torts § 652B, cmt d (1977). The Second Restatement suggests that because "two or three" calls would not be "highly offensive to the ordinary reasonable [person]," they traditionally would provide no cause of action. *Id.* Yet when Congress found that "[u]nsolicited telemarketing phone calls or text messages, by their nature, invade the privacy and disturb the solitude of their recipients," *Van Patten*, 847 F.3d at 1043, it sought to protect the same interests implicated in the traditional common law cause of action.[3] Put differently, Congress was

---

[3] We agree with the Chamber of Commerce that a party does not satisfy the concreteness analysis "simply by appending the word 'privacy' to her allegation." Chamber Br. 14. But intrusion upon seclusion is a well-recognized subset of common law invasion of privacy. *See Wilcher v. City of Wilmington*, 139 F.3d 366, 379 (3d Cir. 1998); W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 117, p. 854–55 (5th ed. 1984) (discussing "unreasonable and highly offensive intrusion upon the seclusion of another" as

not inventing a new theory of injury when it enacted the TCPA. Rather, it elevated a harm that, while "previously inadequate in law," was of the same character of previously existing "legally cognizable injuries." *Spokeo*, 136 S. Ct. at 1549. *Spokeo* addressed, and approved, such a choice by Congress.

For these reasons, we hold that Susinno has alleged a concrete, albeit intangible, harm under the Supreme Court's decision in *Spokeo* and our decision in *Horizon*. Because we so hold, we need not address her additional arguments that her various tangible injuries provide alternative grounds for standing.[4]

\*   \*   \*

"[C]ourts benefit from straightforward rules under which they can readily assure themselves of their power to hear a case." *Hertz Corp. v. Friend*, 559 U.S. 77, 94 (2010).

---

"consist[ing] of intentional interference with another's interest in solitude or seclusion," including "persistent and unwanted telephone calls" (footnote omitted)).

[4] Nor do we need to resolve the issue, not fully briefed by the parties, of whether wasted time is a tangible or intangible harm. *Compare A.D. v. Credit One Bank, N.A.*, 2016 WL 4417077, at \*7 (N.D. Ill. Aug. 19, 2016) ("tangible harms" in TCPA context may include "wasted time") *with Mey v. Got Warranty, Inc.*, 193 F. Supp. 3d 641, 648 (N.D. W. Va. 2016) ("final intangible harm" caused by unwanted calls included "wast[ing] the plaintiff's time").

13

Our opinion today repeats our "understand[ing] that the *Spokeo* Court meant to reiterate traditional notions of standing." *Horizon*, 846 F.3d at 638. And the traditional notion of standing "requir[es] only that claimant allege some specific, identifiable trifle of injury." *Blunt v. Lower Merion School Dist.*, 767 F.3d 247, 278 (3d Cir. 2014) (alterations and citations omitted). Where a plaintiff's intangible injury has been made legally cognizable through the democratic process, and the injury closely relates to a cause of action traditionally recognized in English and American courts, standing to sue exists.

Consistent with this legal standard, we hold that the TCPA provides Susinno with a cause of action, and that her injury satisfies the concreteness requirement for constitutional standing. Accordingly, we will vacate the District Court's order dismissing her case and remand for further proceedings consistent with this opinion.

14