# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

JEFFREY HALE, Individually and on Behalf
of All Others Similarly Situated,

                Plaintiffs,

vs.

CREDITORS RELIEF, LLC,

                Defendant.

Civil Action No.: 2:17-cv-02447-JMV-MF

Civil Action

DOCUMENT ELECTRONICALLY FILED

---

## DEFENDANT CREDITORS RELIEF LLC'S BRIEF IN SUPPORT OF ITS MOTION TO DISMISS AND/OR DENY CLASS CERTIFICATION PURSUANT TO RULE 23

---

**CHIESA SHAHINIAN & GIANTOMASI PC**
One Boland Drive
West Orange, NJ 07052
Telephone: (973) 325-1500
Facsimile: (973) 325-1501

*Attorneys for Defendant*
*Creditors Relief, LLC*

On the Brief:
    Lee Vartan
    A. Ross Pearlson
    Daniel D. Barnes

4811-9523-1391.v1

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................. 1

STATEMENT FACTS ............................................................................................ 3

A.    THE TELEPHONE CONSUMER PROTECTION ACT .................................... 3

B.    CREDITORS RELIEF, LLC ........................................................................... 4

C.    THE FIRST AMENDED COMPLAINT ........................................................... 5

ARGUMENT ......................................................................................................... 8

POINT I ................................................................................................................. 8

CLASS CERTIFICATION MUST BE DENIED AS A MATTER OF LAW
BECAUSE DEFENDANT DOES NOT USE AN AUTO-DIALER ........................... 8

POINT II ............................................................................................................... 11

PLAINTIFF'S PROPOSED CLASS IS AN IMPERMISSIBLE "FAIL SAFE"
CLASS AND CANNOT BE CERTIFIED .............................................................. 11

POINT III .............................................................................................................. 14

PLAINTIFF'S PROPOSED CLASS FAILS TO SATISFY THE
PREDOMINANCE AND ASCERTAINABILITY REQUIREMENTS OF RULE
23 ......................................................................................................................... 14

A.    PLAINTIFF'S PROPOSED CLASS FAILS TO MEET THE
PREDOMINANCE REQUIREMENT OF RULE 23 BECAUSE CLASS-
WIDE PROOF OF CONSENT IS NOT POSSIBLE. ...................................... 15

B.    PLAINTIFF'S PROPOSED CLASS FAILS TO MEET THE
ASCERTAINABILITY REQUIREMENT OF RULE 23 BECAUSE
DETERMINING CLASS MEMBERSHIP WILL REQUIRE MINI-
TRIALS ON THE MERITS. ......................................................................... 18

CONCLUSION .................................................................................................... 22

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Amchem Prod., Inc. v. Windsor,
  521 U.S. 591, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997) ........................................................14

Arora v. Transworld Sys. Inc.,
  No. 15-CV-4941, 2017 WL 3620742 (N.D. Ill. Aug. 23, 2017) ...........................................10

Bais Yaakov of Spring Valley v. ACT, Inc.,
  328 F.R.D. 6 (D. Mass. 2018)..................................................................................................12

Byrd v. Aaron's Inc.,
  784 F.3d 154 (3d Cir. 2015)....................................................................................................19

Carrera v. Bayer Corp.,
  727 F.3d 300 (3d Cir. 2013).................................................................................18, 19, 20, 21

Collins v. Nat'l Student Loan Program,
  360 F. Supp. 3d 268 (D.N.J. 2018) ...........................................................................................4

Dominguez on Behalf of Himself v. Yahoo, Inc.,
  894 F.3d 116 (3d Cir. 2018)..................................................................................................3, 8

Forman v. Data Transfer, Inc.,
  164 F.R.D. 400 (E.D. Pa. 1995)...............................................................................................18

Gene And Gene LLC v. BioPay LLC,
  541 F.3d 318 (5th Cir. 2008) ...............................................................................15, 16, 17, 18

In re Hydrogen Peroxide Antitrust Litig.,
  552 F.3d 305 (3d Cir. 2008)....................................................................................................14

Labou v. Cellco P'ship,
  No. 2:13-CV-00844-MCE, 2014 WL 824225 (E.D. Cal. Mar. 3, 2014)..................................8

Marcus v. BMW of N. Am., LLC,
  687 F.3d 583 (3d Cir. 2012)............................................................................................. passim

Martinez v. Equifax Inc.,
  No. CV 15-2100 (SRC), 2016 WL 226639 (D.N.J. Jan. 19, 2016)...........................................8

Messner v. Northshore Univ. HealthSystem,
  669 F.3d 802 (7th Cir. 2012) ...................................................................................................12

4811-9523-1391.v1

# TABLE OF AUTHORITIES

**Page**

Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,
   259 F.3d 154 (3d Cir. 2001)..................................................................................18

Picus v. Wal-Mart Stores, Inc.,
   256 F.R.D. 651 (D. Nev. 2009)................................................................................8

Pozo v. Stellar Recovery Collection Agency, Inc.,
   No. 8:15-CV-929-T-AEP, 2016 WL 7851415 (M.D. Fla. Sept. 2, 2016) ..................9

Randleman v. Fidelity Nat'l Title Ins. Co.,
   646 F.3d 347 (6th Cir. 2011) ............................................................................11, 14

Schlusselberg v. Receivables Performance Mgmt.,
   LLC, No. CV 15-7572(FLW), 2017 WL 2812884 (D.N.J. June 29, 2017)............................10

Smith v. Stellar Recovery, Inc.,
   No. 2:15-CV-11717, 2017 WL 955128 (E.D. Mich. Mar. 13, 2017) ........................9

Swetic Chiropractic & Rehab. Ctr. v. Foot Levelers, Inc.,
   235 F. Supp. 3d 882 (S.D. Ohio 2017) ..................................................................13

Wal-Mart Stores, Inc. v. Dukes,
   564 U.S. 338 (2011)................................................................................................14

Wetzel v. Liberty Mut. Ins. Co.,
   508 F.2d 239 (3d Cir. 1975).....................................................................................14

Wilson v. Quest Diagnostics Inc.,
   No. CV 2:18-11960, 2018 WL 6600096 (D.N.J. Dec. 17, 2018) ...............................4

Zarichny v. Complete Payment Recovery Servs., Inc.,
   80 F. Supp. 3d 610 (E.D. Pa. 2015) ................................................................11, 12

4811-9523-1391.v1

## PRELIMINARY STATEMENT

In his First Amended Complaint ("FAC"), Plaintiff Jeffrey Hale alleges that Defendant Creditors Relief, LLC ("Creditors Relief"), a company that offers debt relief programs to struggling businesses, is engaged in a nationwide effort to violate the Telephone Consumer Protection Act ("TCPA") "hundreds, if not thousands of" times over by marketing its programs indiscriminately and with the aid of an impermissible auto-dialer. (Certification of Lee Vartan, Esq. ("Vartan Cert."), Exh. A at ¶ 27). Hale seeks certification of a nationwide class and appointment as its representative.

The FAC is grossly deficient. It alleges a violation of the TCPA as to Plaintiff based on a "1-3 second pause" that preceded Plaintiff's connection to a "live agent," which he claims, without explanation, demonstrates that Defendant initiated the call with an auto-dialer, and a violation of the TCPA as to "hundreds, if not thousands" of unknown others based on impossible knowledge of Defendant's "marketing plan." (Id. at ¶¶ 11, 18, 27). The discovery exchanged to date shows that Plaintiff's claims fail as a matter of law and class certification must be denied. First, Creditors Relief has never used an auto-dialer. All of its marketing calls were made by a live agent. If Defendant did not use an auto-dialer—and Creditors Relief did not—then no individual or class claim can be sustained under the TCPA. Second, Plaintiff's proposed class is a prohibited "fail-safe" class, i.e., a class impermissibly defined to include only members whose claims would be successful on the merits. Courts in this and other circuits have regularly refused to certify fail-safe classes. Lastly, Plaintiff's proposed class cannot meet the predominance and ascertainability requirements of Rule 23. Plaintiff's claimed knowledge of Defendant's "marketing plan" is all wrong. Defendant does not engage in a blind marketing strategy, blanketing businesses with "unsolicited, autodialed calls." (Id. at ¶ 11). Creditors Relief does the opposite. In fact, many of the businesses contacted by Defendant provided Creditors Relief with advance consent to be

contacted.  (<u>Id.</u>, Exh. B at 9).  Because consent defeats a TCPA claim, and because Defendant's client database does not distinguish between clients who consented to be contacted and those who did not, individual issues of consent would have to first be adjudicated to determine class membership and, later, to determine Defendant's liability.  Those individual issues would overwhelm common ones, and defeat the economy and efficiency intended by class action treatment and Rule 23.

4811-9523-1391.v1

## STATEMENT FACTS

**A.      The Telephone Consumer Protection Act**

Congress sought to address consumers' concerns with undesired robocalls in the Telephone Consumer Protection Act of 1991.   The TCPA restricts calls both "to any residential telephone line" and to "any telephone number assigned to a ... cellular telephone service."   47 U.S.C. § 227(b)(1)(B), (A)(iii).   The allegations in the FAC concern cellular telephones only.   In that regard, the TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system ... to any telephone number assigned to a ... cellular telephone service ... unless such call is made solely to collect a debt owed to or guaranteed by the United States."   47 U.S.C. § 227(b)(1)(A)(iii) (emphasis added).   The statute defines an "automatic telephone dialing system" as "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers."   47 U.S.C. § 227(a)(1).[1]   Stated plainly, the TCPA makes it unlawful to call a cellular telephone using an automatic telephone dialing system unless: (1) the call is made for emergency purposes; (2) the call is made to collect a debt owed to or guaranteed by the United States; or (3) the called party has provided advance consent.

To be an ATDS, the equipment must presently function as an ATDS, and not merely have the future or latent capacity to function as such.   See, e.g., Dominguez on Behalf of Himself v. Yahoo, Inc., 894 F.3d 116, 118 (3d Cir. 2018) (citing favorably ACA International v. FCC and adopting its holding that the "FCC had exceeded its authority by interpreting the term 'capacity' to include any latent or potential capacity").   As well, if the equipment requires manual human

---

[1] An "automatic telephone dialing system" is also known as an auto-dialer or ATDS.

intervention to initiate a call, it is not an ATDS.  See Collins v. Nat'l Student Loan Program, 360 F. Supp. 3d 268, 273 (D.N.J. 2018) (Bumb, J.) (if equipment "cannot initiate calls without manual human intervention by a clicker agent" equipment is not an ATDS under the TCPA); see also Wilson v. Quest Diagnostics Inc., No. CV 2:18-11960, 2018 WL 6600096, at *3 (D.N.J. Dec. 17, 2018) (Martini, J.) ("[A] predictive dialer qualifies as an ATDS so long as it has 'the [present] capacity to dial numbers without human intervention.'").

**B.**     **Creditors Relief, LLC**

Headquartered in Bergen County, New Jersey, Creditors Relief offers debt relief programs to struggling businesses across the country.  (See Vartan Cert., Exh. A at ¶¶ 1, 3).  Creditors Relief does not market its programs to potential clients randomly or indiscriminately; rather, it markets its programs to businesses that have either expressed interest in its programs or have a potential need for those programs based on Defendant's research.  Specifically, Creditors Relief identifies business leads in one of three ways: (1) certain businesses affirmatively contact Defendant in response to Defendant's advertising, including online advertising; (2) Defendant researches Uniform Commercial Code ("UCC") filings to identify businesses possibly in need of Defendant's services; and (3) Defendant employs third-party vendors that identify and provide Defendant with businesses that consented to be contacted by Defendant.  (See id., Exh. B at 9; see also Declaration of Alan Tunit, ("Tunit Decl.") at ¶ 3).

Regardless of origin, all client leads are entered into Defendant's Client Relations Manager ("CRM") system.  Specifically, the lead's business name, primary contact, address, e-mail address, and telephone number are entered into the CRM system.  (See Tunit Decl. at ¶ 4; see also Vartan Cert., Exh. B at 10).  Importantly, how the client lead was first identified is not included in the CRM system.  That is, Creditors Relief does not know—and cannot now determine—if a lead included in the CRM system first contacted Creditors Relief itself or was identified by a third-

party vendor or was found through UCC filings. (<u>See</u> Tunit Decl. at ¶ 5). Creditors Relief pays special attention to the client lead's telephone number. Defendant does not call cellular telephones. Before a telephone number is entered into the CRM system, Defendant screens the number to ensure that it is not a cellular number and does not appear on any federal or state Do Not Call registry. (<u>See</u> Vartan Cert., Exh. B at 10; <u>see also</u> Tunit Decl. at ¶ 6). Only telephone numbers that successfully pass through all screens are entered into the CRM system.

Defendant's client representatives use a program, Velocify Enterprise, to place all outbound marketing calls. Velocify Enterprise is a click-to-dial system. That is, all outbound marketing calls require the client representative to select a business from the CRM system to call and then affirmatively "click" on that business's telephone number in order for the number to be dialed. (<u>See</u> Vartan Cert., Exh. B at 10, 12; <u>see also</u> Tunit Decl. at ¶ 7). No call can be made without active human intervention. Initial client calls are recorded, but they are saved for 30 days only. If the business rejects Creditors Relief's services, the representative makes a note in the CRM system, and the business is not called again. If the business is interested in Creditors Relief's services, a separate welcome call is made to the business. Generally, it is Creditors Relief's practice to save those calls indefinitely. (<u>See</u> Tunit Decl. at ¶ 8).

## C.    The First Amended Complaint

Plaintiff Jeffrey Hale alleges that he received a single, "autodialed" call from Creditors Relief to his cellular telephone on March 8, 2017. (<u>See</u> Vartan Cert., Exh. A ¶ 17). The call originated from (201) 956-6966. (<u>See id.</u>). Hale further alleges that he was able to divine that the call was made with the assistance of an auto-dialer proscribed by the TCPA based on a "1-3 second pause" that preceded his connection to a "live agent." (<u>Id.</u> ¶ 18). According to the FAC, and without any explanation as to why (or how Plaintiff would even know), "[s]uch a pause is indicative of the Defendant using a prohibited autodialer." (<u>Id.</u>). The FAC continues that upon

"information and belief," Defendant's call to Hale was not an isolated event, but was instead one of "hundreds, if not thousands" of calls made to individuals across the country on their cellular telephones using a prohibited ATDS. (Id. ¶ 27). Plaintiff attempts to substantiate his otherwise unsupported and unsupportable allegations by claiming knowledge of Defendant's "marketing plan," of which he could have no knowledge, and citing to a generic job posting on Indeed.com and unattributed Internet postings about companies that may or may not have been Creditors Relief. (Id. at ¶¶ 11-13) (citing one unattributed Internet posting that read in relevant part, "Googling indicates the call is likely from Creditors Debt Relief," not Creditors Relief) (emphasis added). In short, the FAC alleges that Creditors Relief violated the TCPA as to Plaintiff because Plaintiff heard a "1-3 second pause" before speaking with a client representative, and purportedly violated the TCPA as to "hundreds, if not thousands" more in a similar fashion because Plaintiff said so. Plaintiff seeks certification of a nationwide class based on Federal Rules of Civil Procedure 23(b)(2) and (b)(3) as follows:

> **Autodialed No Consent Class:** All persons in the United States from four years prior to the filing of this action through the present who (1) Defendant (or an agent acting on behalf of Defendant) called, (2) on the person's cellular telephone, (3) using an autodialer, and (4) for whom Defendant claims (a) they obtained prior express written consent in the same manner as Defendant claims they supposedly obtained prior express written consent to call the Plaintiff, or (b) they did not obtain prior express written consent.

(Id. at ¶ 25).

The discovery conducted to date proves the impossibility of Plaintiff's claims, both on a class and individual basis. Defendant's "marketing plan" does not "direct[] agents to market its debt assistance options to businesses through unsolicited, autodialed calls to cellular phone numbers and other telephone numbers registered on the DNC." (Id. at ¶ 11). The undisputed evidence proves that Creditors Relief does the opposite. Its "marketing plan" is strategic, targeting

-6-

only those businesses that have expressed interest, either directly or through a third-party, in being contacted by Defendant, or who appear to be in need of Defendant's services based on UCC filings. (See id., Exh. B at 9-10; see also Tunit Decl. at ¶ 3).  There is no blunderbuss, "call-the-world on their cellular telephones" approach as alleged in the FAC.  In fact, Creditors Relief is careful to screen out cellular telephone numbers and numbers included on federal and state Do Not Call registries before entering any telephone number into its CRM System.  (See Vartan Cert., Exh. B at 10; see also Tunit Decl. at ¶ 6).  The undisputed evidence also proves that when Creditors Relief does call, it is always a call initiated by a human agent.  (See Vartan Cert., Exh. B at 12; see also Tunit Decl. at ¶ 7).  That is, there can be no individual or nationwide violation of the TCPA as a matter of law because Creditors Relief does not now employ—and has never employed—an ATDS to call its business leads.[2]

---

[2] It must also be noted that the discovery conducted to date makes it uncertain whether Defendant even called Plaintiff on March 8, 2017.  Creditors Relief has no record in its CRM system of any outgoing call made to Jeffrey Hale, and Defendant does not use the telephone number "(201) 956-6966" to place outbound calls.  (See Vartan Cert., Exh. B at 11; see also Tunit Decl. at ¶¶ 9-10).

4811-9523-1391.v1

**ARGUMENT**

**POINT I**

**CLASS CERTIFICATION MUST BE DENIED AS A
MATTER OF LAW BECAUSE DEFENDANT DOES NOT
USE AN AUTO-DIALER**

Where, as a matter of law, a class cannot be certified, a motion to deny class certification should be granted, even if the litigation is at an early stage.  See, e.g., Martinez v. Equifax Inc., No. CV 15-2100 (SRC), 2016 WL 226639, at *4 (D.N.J. Jan. 19, 2016) (Chesler, J.) (striking class action allegations even though litigation was at an "early stage" because "as a matter of law, [] this Court would never grant a motion for class certification involving this class definition"); see also Picus v. Wal-Mart Stores, Inc., 256 F.R.D. 651, 655 (D. Nev. 2009) ("If, as a matter of law, a class cannot be certified …, it would be a waste of the parties' resources and judicial resources to conduct discovery on class certification.") (citation and quotations omitted); Labou v. Cellco P'ship, No. 2:13-CV-00844-MCE, 2014 WL 824225, at *3 (E.D. Cal. Mar. 3, 2014) (same). Plaintiff's proposed TCPA class can never be certified as a matter of law; Creditors Relief does not use an auto-dialer in its business.

The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system … to any telephone number assigned to a … cellular telephone service … unless such call is made solely to collect a debt owed to or guaranteed by the United States." 47 U.S.C. § 227(b)(1)(A)(iii) (emphasis added).  The statute defines an "automatic telephone dialing system" as "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1).  To be an ATDS, the equipment must presently function as an ATDS, and not merely have the future or latent capacity to function as such. See, e.g., Dominguez, 894 F.3d at 118 (citing

-8-

favorably <u>ACA International v. FCC</u> and adopting its holding that the "FCC had exceeded its authority by interpreting the term 'capacity' to include any latent or potential capacity"). Under the TCPA then, a telephone call, even one made to a cellular telephone and without advance consent, is only unlawful if an ATDS was used to initiate the call.

This Court has made clear that, as a matter of law, equipment that requires active human intervention to place a telephone call is not an ATDS. In <u>Fleming v. Associated Credit Services, Inc.</u>, the Hon. Kevin McNulty, U.S.D.J., considered whether equipment that required the use of a "clicker agent" to initiate a call, but otherwise required no human involvement (and actually limited human agency), was an auto-dialer under the TCPA. 342 F. Supp. 3d 563, 577 (D.N.J. 2018) (McNulty, J.) (noting that while the equipment initiated calls "by a 'click' from a person who is presented with a number for her to dial on a screen[,]" the "agent merely clicks from the bottom to the top through the list, can only stop clicking numbers if he or she goes on break or logs out of the system altogether, [and] cannot decide to skip calling a number or to call a different number"). While acknowledging that the equipment required only a "minimal amount of 'human intervention,'" the Court nevertheless held: "The action of the 'clicker agent' … constitutes enough 'human intervention' to bring the system outside the statutory definition of an ATDS." <u>Id.</u> at 578. A number of other federal courts have agreed, recognizing that a "dialer is not an autodialer unless it has the capacity to dial numbers without human intervention." <u>Id.</u> at 577; <u>see</u>, <u>e.g.</u>, <u>Smith v. Stellar Recovery, Inc.</u>, No. 2:15-CV-11717, 2017 WL 955128, at *3 (E.D. Mich. Mar. 13, 2017) ("Since the 'basic function' of an autodialer is the capacity to dial phone numbers 'without human intervention,' and the HCI system lacks that capacity, the HCI is not an autodialer."); <u>Pozo v. Stellar Recovery Collection Agency, Inc.</u>, No. 8:15-CV-929-T-AEP, 2016 WL 7851415, at *6 (M.D. Fla. Sept. 2, 2016) ("Because [defendant's] HCI system required its representatives to

manually dial all calls and was not capable of making any calls without human intervention, [defendant] did not employ an autodialer."); Schlusselberg v. Receivables Performance Mgmt., LLC, No. CV 15-7572(FLW), 2017 WL 2812884, at *4 (D.N.J. June 29, 2017) (Wolfson, C.J.) (citing Pozo and holding that where equipment "did not allow any calls to be automatically made by the system" and "clicker agents initiated all calls by clicking a dialogue box," the equipment was not an ATDS); Arora v. Transworld Sys. Inc., No. 15-CV-4941, 2017 WL 3620742, at *3 (N.D. Ill. Aug. 23, 2017) ("[T]he numbers are stored in a 'campaign database' on a LiveVox server and 'presented to the [clicker] agent' through a system component called an Automatic Call Distributor. Thus, every call made using the Human Call Initiator requires direct human intervention to initiate. Therefore, this Court, like the previous Courts who have considered this technology, finds that Human Call Initiator system does not constitute an autodialer.").

Creditors Relief uses a click-to-dial system to initiate all of its outbound marketing calls. Active human intervention is always required. In fact, Defendant's Velocify Enterprise system requires more human intervention than the defendant's equipment in Fleming did. Defendant's client representatives must access the CRM system, select a business to call, and then initiate the call by clicking on the business's telephone number. (See Vartan Cert., Exh. B at 12; see also Tunit Decl. at ¶ 7). The representative is free to stop clicking at any time, skip a business, or call a different business. Cf. Fleming, 342 F. Supp. 3d at 577. No amount of discovery will change these facts. Defendant's click-to-dial system requires active human participation and, therefore, is not an ATDS as a matter of law.[3] Plaintiff's claim must be dismissed, and class certification must be denied.

---

[3] With leave of the Court, Defendant is prepared to make a summary judgment motion pursuant to Fed. R. Civ. P. 56 if the Court denies Defendant's Motion to Deny Class Certification.

4811-9523-1391.v1

## POINT II

## PLAINTIFF'S PROPOSED CLASS IS AN IMPERMISSIBLE "FAIL SAFE" CLASS AND CANNOT BE CERTIFIED

Plaintiff's proposed class is an impermissible "fail-safe" class, requiring denial of class certification. A fail-safe class is "one that is defined so that whether a person qualifies as a member depends on whether the person has a valid claim." Zarichny v. Complete Payment Recovery Servs., Inc., 80 F. Supp. 3d 610, 623 (E.D. Pa. 2015) (citing Messner v. Northshore Univ. HealthSystem, 669 F.3d 802, 825 (7th Cir. 2012)). "Its existence, therefore, cannot be ascertained until the conclusion of the case, when liability is determined." Zarichny, 80 F. Supp. 3d at 623. Fail-safe classes are prohibited because they allow a putative class member to seek a remedy, but not be bound by an adverse judgment—either those "class members win or, by virtue of losing, they are not in the class and, therefore, not bound by the judgment." Randleman v. Fidelity Nat'l Title Ins. Co., 646 F.3d 347, 352 (6th Cir. 2011).

Zarichny is instructive. In that case, plaintiff alleged that defendants violated the Fair Debt Collection Practices Act and the TCPA and sought class certification. 80 F. Supp. 3d at 613-14. Relevant here, plaintiff sought to certify a class under the TCPA of people "who received one or more telephone calls from [d]efendants on the individual's cellular telephone that was initiated using an automatic telephone dialing system" without prior consent. Id. at 614. The defendants moved to dismiss the plaintiff's first amended complaint under Rule 12(b)(6) and strike the putative class action claims under Rule 12(f). Id. at 613. On the TCPA class action claim, defendants argued:

> If the [p]laintiff successfully demonstrates that the [d]efendant made calls using ... [a] prerecorded voice to the class members' cell phones without the class members' prior express consent, then the class members win. However, if the [p]laintiffs are unsuccessful in meeting their burden of proof, the class does not exist and the class

-11-

> is not bound by the judgment in favor of the [d]efendant.  <u>This is the definition of a prohibited fail-safe class</u>.

<u>Id.</u> at 624 (emphasis added).  Notably, the plaintiff responded that defendants' motion should be denied because she had not yet moved for certification and that "the class definition can be revised" through the course of litigation.  <u>Id.</u> at 624.  The district court sided with defendants, holding that "Zarichny's TCPA class purports to include only those who did not provide [defendants] with 'prior consent'" and that no amount of discovery could resurrect plaintiff's class definition.  <u>Id.</u> at 623.  Specifically, the court emphasized that before a court in the Third Circuit could consider the four requirements of Rule 23(a), it must first ensure that "(1) … the perimeter of the class and the claims to be given class treatment pursuant to Rule 23(c)(1)(B) [are clearly defined], and (2) determine whether the class is objectively ascertainable."  <u>Id.</u> at 625.  The court held that the putative class did not meet those requirements because it was an impermissible fail-safe class:

> Fail-safe classes [are] one category of classes failing to satisfy the ascertainability requirement. … The putative TCPA class is comprised of those people who received [defendant] telephone calls without the recipient's "prior express consent."  Since we are at the outset of this litigation, there is no way to provide notice to that putative class without the sort of extensive fact-finding that class actions should avoid.  Similarly, at the conclusion of the litigation, should [defendant] prevail against [plaintiff], any other putative class recipient would be free to litigate the same claim against [defendant].

<u>Id.</u> at 625-26 (citations and quotation omitted).

Other federal courts have likewise denied certification to putative fail-safe classes in the TCPA context.  <u>See</u>, <u>e.g.</u>, <u>Messner</u>, 669 F.3d at 825 ("[T]he problem of the 'fail-safe' class: one that is defined so that whether a person qualifies as a member depends on whether the person has a valid claim.  Such a class definition is improper because a class member either wins or, by virtue of losing, is defined out of the class and is therefore not bound by the judgment."); <u>Bais Yaakov of Spring Valley v. ACT, Inc.</u>, 328 F.R.D. 6, 14 (D. Mass. 2018) ("A 'fail-safe class' 'is defined

4811-9523-1391.v1

so that whether a person qualifies as a member depends on whether the person has a valid claim

on the merits.' ... The First Circuit has noted that these classes are 'inappropriate' as they make it

'virtually impossible for the Defendants to ever "win" the case, with the intended class preclusive

effects.'"); <u>Swetic Chiropractic & Rehab. Ctr. v. Foot Levelers, Inc.</u>, 235 F. Supp. 3d 882, 891

(S.D. Ohio 2017) ("The Court agrees with [defendant] that the class definition in the Complaint

would constitute an improper fail-safe class in any attempt to certify.  The class only includes

persons who either did not give permission or received a fax which did not contain a proper opt-

out notice.").

Plaintiff's putative class is an obvious fail-safe class.  The proposed class to be certified

includes:

> All persons in the United States from four years prior to the filing of
> this action through the present who . . . [Four years represents the
> statute of limitations for TCPA claims. <u>Bais Yaakov</u>, 936 F. Supp.
> 2d at 281]
>
>  (1) Defendant (or an agent acting on behalf of Defendant) called,
>
> (2) on the person's cellular telephone [Prohibited under 47 U.S.C. §
> 227(b)(1)(A)(iii) when combined with (3) & (4)]
>
> (3) using an autodialer, and [Prohibited under 47 U.S.C. §
> 227(b)(1)(A) when combined with (2) & (4)]
>
> (4) for whom Defendant . . . did not obtain prior express written
> consent [Prohibited under 47 U.S.C. § 227(b)(1)(A) when combined
> with (2) & (3)].

(Vartan Cert., Exh. A at ¶ 25).   The proposed class—individuals who received a call from

Defendant initiated by an ATDS within the statute of limitations, on their cellular telephones, and

without providing advance consent—makes plain that only individuals with meritorious claims

would be included in the class.  In other words, the proposed class consists only of persons who

can establish that Defendant violated the TCPA as to them.  This is a no-lose situation for potential

members of the class: either those "class members win or, by virtue of losing, they are not in the class" and are not bound by the judgment. Randleman, 646 F.3d at 352. As such, this Court should deny certification because Plaintiff's putative class is an impermissible fail-safe class.

**POINT III**

**PLAINTIFF'S PROPOSED CLASS FAILS TO SATISFY
THE PREDOMINANCE AND ASCERTAINABILITY
REQUIREMENTS OF RULE 23**

"The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 348 (2011) (citation and quotations omitted). "To invoke this exception, every putative class action must satisfy the four requirements of Rule 23(a) [numerosity, commonality, typicality, and adequacy] and the requirements of either Rule 23(b)(1), (2), or (3)." Marcus v. BMW of N. Am., LLC, 687 F.3d 583, 590 (3d Cir. 2012). Plaintiff bears the burden of satisfying all the requirements of Rule 23, and his burden is a demanding one. See, e.g., Wetzel v. Liberty Mut. Ins. Co., 508 F.2d 239, 246 (3d Cir. 1975); see also Amchem Prod., Inc. v. Windsor, 521 U.S. 591, 615, 117 S. Ct. 2231, 2246, 138 L. Ed. 2d 689 (1997) (holding that district courts must take a "close look" at whether plaintiff has carried her burden before certifying a class); In re Hydrogen Peroxide Antitrust Litig., 552 F.3d 305, 309 (3d Cir. 2008) ("Class certification is proper only 'if the trial court is satisfied, after a rigorous analysis, that the prerequisites' of Rule 23 are met.") (citing Gen. Tel. Co. of S.W. v. Falcon, 457 U.S. 147, 161 (1982) (emphasis added).

Hale has not satisfied his demanding burden. He seeks certification of a class pursuant to Rule 23(b)(3), (Vartan Cert., Exh. A at ¶ 25), but the predominant issue in the litigation— consent—is not susceptible to class-wide proof. As well, Hale's proposed class is not ascertainable under Third Circuit precedent.

-14-

A.      **Plaintiff's Proposed Class Fails to Meet the Predominance Requirement of Rule 23 because Class-wide Proof of Consent is Not Possible.**

"Under Rule 23(b)(3), 'questions of law or fact common to class members [must] predominate over any questions affecting only individual members.' This predominance requirement 'tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" Marcus, 687 F.3d at 600 (quoting Windsor, 521 U.S. at 623). "To assess predominance, a court at the certification stage must examine each element of a legal claim 'through the prism' of Rule 23(b)(3)." Marcus, 687 F.3d at 600 (quoting In re DVI, Inc. Sec. Litig., 639 F.3d 623, 630 (3d Cir. 2011)). "A plaintiff must 'demonstrate that the element of [the legal claim] is capable of proof at trial through evidence that is common to the class rather than individual to its members.'" Marcus, 687 F.3d at 600 (quoting In re Hydrogen Peroxide Antitrust Litig., 552 F.3d at 311); see also Gene And Gene LLC v. BioPay LLC, 541 F.3d 318, 326 (5th Cir. 2008) ("The predominance inquiry requires a court to consider how a trial on the merits would be conducted if a class were certified.") (citation and quotations omitted). "Because the nature of the evidence that will suffice to resolve a question determines whether the question is common or individual, a district court must formulate some prediction as to how specific issues will play out in order to determine whether common or individual issues predominate in a given case." Marcus, 687 F.3d at 600 (citation and quotations omitted). Here, the Court's "prediction" does not require much imagination. "[T]he issue of consent will entirely determine how the proposed class-action trial will be conducted on the merits." BioPay, 541 F.3d at 327. The class claim in BioPay was (nearly) factually identical to Plaintiff's class claim.

BioPay, through a third-party contractor, sent over 4,000 fax messages advertising its services to potential clients in Louisiana. One of BioPay's faxes was sent to Gene & Gene, LLC. Gene filed a class-action suit against BioPay alleging that BioPay violated the TCPA by sending

-15-

unsolicited fax advertisements to Gene and to an unidentified number of class members.  See id.

at 322-23.  "BioPay argued that determining whether the recipient of each fax had consented to its

transmission would require a series of individual factual determinations, or mini-trials, which

made class certification improper."  Id. at 323.  BioPay's argument was based on the fact that in

addition to purchasing databases from which it culled fax numbers, BioPay also culled fax numbers

from other sources, including "from information submitted by merchants through BioPay's

website, from information submitted at trade shows BioPay attended, and also from lists of

companies with which BioPay or its affiliates had an established business relationship."  Id.

BioPay also proffered evidence that its database did not "consistently or accurately reflect"

whether the recipient had provided advance consent.  Id.  The result, according to BioPay, was

there was "no class-wide basis by which to distinguish those fax recipients who had consented to

receiving faxes from those who had not consented, which suggests that the determination of

consent, or the lack thereof, would require hundreds of mini-trials."  Id.  Gene countered that "the

requirements of Rule 23(a) and (b)(3) [were] satisfied because BioPay engaged in a common

course of conduct."  Id. at 325.  The Fifth Circuit agreed with BioPay, and held that "the

predominant issue of fact is undoubtedly one of individual consent" and "class-wide proof of

consent [was] not possible" because:

> the evidence shows that the recipients' fax numbers were collected
> over time and from a variety of sources, [and] individual inquiries
> of the recipients are necessary to sort out which transmission was
> consented to and which was not.  In short, there is no class-wide
> proof available to decide consent and only mini-trials can determine
> this issue.

Id. at 327-29 (emphasis in original).  The Sixth Circuit reached the same conclusion in Sandusky

Wellness Center., LLC v. ASD Specialty Healthcare, Inc.

Like BioPay, Sandusky involved a class claim under the TCPA. Defendant, a pharmaceutical distributor, purchased a list of physicians from a third-party vendor, condensed that list down to 53,502 names, and sent all of those physicians a one-page fax advertising the drug Prolia. Approximately 75%, or 40,343 of the faxes, were successfully transmitted. See 863 F.3d 460, 462, 464-65 (6th Cir. 2017). A physician employed by plaintiff claimed to be among the 40,343 and filed a lawsuit alleging a violation of the TCPA and seeking to certify a class of all recipients of the Prolia fax. Id. at 462. Although the "Prolia list" was condensed from a physician list purchased by defendant from a third-party, not all of the physicians on the list were previously unknown to defendant; some were current or former customers of defendant. Id. at 464-65. Under certain circumstances, the TCPA allows for unsolicited faxes to be sent to a recipient where the sender and recipient have an "established business relationship." See 47 U.S.C. § 227(b)(1)(C)(i)-(iii). Plaintiff's proposed class, however, did nothing to "distinguish between which faxes were unsolicited and which were solicited." Sandusky Wellness Ctr., 863 F.3d at 465. Noting this, the district court denied plaintiff's motion for class certification because "two individualized issues—class member identity [the fax logs no longer existed] and consent—were central to the lawsuit and thus prevented 'questions of law or fact common to class members [from] predominat[ing].'" Id. at 465. The appellate court agreed, holding:

> [I]f [plaintiff's] 40,343-member class were certified, the district court would be tasked with filtering out those members to whom [defendant] was not liable—those individuals who solicited the Prolia fax. Regardless of other questions that may be common to the class, identifying which individuals consented would undoubtedly be the driver of the litigation. In other words, one substantive issue undoubtedly will determine how a trial on the merits will be conducted if the proposed class is certified. This issue … is whether [defendant's] fax advertisements were transmitted without the prior express invitation or permission of each recipient. Thus, the predominant issue of fact is undoubtedly one of individual consent.

-17-

Id. at 468 (citation and quotations omitted).

As in BioPay and Sandusky, the "predominant issue of fact" in Plaintiff's proposed class is "individual consent." Creditors Relief's clients are not from a single source. Instead, and identical to BioPay, some of Defendant's clients consented to be contacted—either affirmatively by themselves contacting Creditors Relief or in response to a third-party solicitation. (See Vartan Cert., Exh. B at 9; see also Tunit Decl. at ¶ 3). Defendant's CRM system does not distinguish between client types. (See Tunit Decl. at ¶ 5). Consequently, if Plaintiff's class were certified, all of the Court's energies would be directed at attempting to separate the "consent clients" from the "no-consent clients," and, as a result, the "issue of consent [would] entirely determine how the proposed class-action trial [would] be conducted on the merits." BioPay, 541 F.3d at 327. Because issues of individual consent predominate, Hale cannot satisfy the "far more demanding" predominance requirement of Rule 23(b)(3), and class certification must be denied. Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 259 F.3d 154, 186, n.32 (3d Cir. 2001) (noting that the predominance requirement of Rule 23(b)(3) is "far more demanding" than the related concept of commonality in Rule 23(a)(3)); see also Forman v. Data Transfer, Inc., 164 F.R.D. 400, 404 (E.D. Pa. 1995) (denying class certification of plaintiff's TCPA claim because, among other things, the "gravamen of plaintiff's complaint [was] not a common course of conduct by the defendant, but rather a series of individual transmissions under individual circumstances" which failed to meet the predominance requirement of Rule 23(b)(3)).

**B.      Plaintiff's Proposed Class Fails to Meet the Ascertainability Requirement of Rule 23 because Determining Class Membership Will Require Mini-Trials on the Merits.**

"Class ascertainability is an essential prerequisite of a class action, at least with respect to actions under Rule 23(b)(3). [T]here is no reason to doubt that the rigorous analysis requirement applies with equal force to all Rule 23 requirements." Carrera v. Bayer Corp., 727 F.3d 300, 306

(3d Cir. 2013) (citations and quotations omitted).   "The ascertainability inquiry is two-fold, requiring a plaintiff to show that: (1) the class is 'defined with reference to objective criteria'; and (2) there is 'a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition.'"  Byrd v. Aaron's Inc., 784 F.3d 154, 163 (3d Cir. 2015) (quoting Marcus, 687 F.3d at 593-94).   "Ascertainability mandates a rigorous approach at the outset because of the key roles it plays as part of a Rule 23(b)(3) class action lawsuit.  First, at the commencement of a class action, ascertainability and a clear class definition allow potential class members to identify themselves for purposes of opting out of a class.  Second, it ensures that a defendant's rights are protected by the class action mechanism.  Third, it ensures that the parties can identify class members in a manner consistent with the efficiencies of a class action."  Carrera, 727 F.3d at 307.

In Marcus, the Third Circuit applied its "rigorous" ascertainability requirement, and held that where "class members are impossible to identify without extensive and individualized fact-finding or 'mini-trials,' then a class action is inappropriate."  Marcus, 687 F.3d at 593.  Such was the case in Marcus, where an automobile lessee brought a putative class action against the vehicle's automobile and tire manufacturers alleging consumer fraud, breach of warranty, and breach of contract claims relating to defective "run-flat" tires.  Id.  Neither defendant, however, maintained records that demonstrated whether a putative class member's run-flat tires "ha[d] gone flat and been replaced, as the class definition require[d]."  Id. at 594.  Because of that, and because plaintiffs had failed to propose "a reliable, administratively feasible alternative" to identify class members, the Third Circuit held that the proposed class was not ascertainable.  Id.  In reaching its conclusion, the court cited favorably decisions from other courts holding that "where nothing in company

4811-9523-1391.v1

databases shows or could show whether individuals should be included in the proposed class, the class definition fails." Id. at 593.

The Third Circuit reached the same conclusion in Carrera, a putative class action alleging that Bayer Healthcare falsely and deceptively advertised a multivitamin with purported weight loss properties, WeightSmart, to consumers. As in Marcus, there was no ready way to determine class membership because there was "no dispute that class members [were] unlikely to have documentary proof of purchase, such as packaging or receipts" and Bayer maintained "no list of purchasers because … it did not sell WeightSmart directly to consumers." Carrera, 727 F.3d at 304. Plaintiff proposed that the class be ascertained by "using affidavits of class members attesting to their purchases of WeightSmart." Id. at 308. The Third Circuit rejected plaintiff's proposal, holding: "A defendant has a similar, if not the same, due process right to challenge the proof used to demonstrate class membership as it does to challenge the elements of a plaintiff's claim," id. at 307, and concluding that the use of affidavits would eviscerate that right because there was "a significant likelihood" of "fraudulent or inaccurate claims" that would both "dilute the recovery of true class members" and leave Bayer exposed to a "new action" because of plaintiff's failure to satisfy the adequacy requirement. Id. at 310. See also Marcus, 687 F.3d at 594 (cautioning against "a method that would amount to no more than ascertaining [a class] by potential class members' say so" because "to accept as true absent persons' declarations that they are members of the class, without further indicia of reliability, would have serious due process implications"); Sandusky Wellness Ctr., 863 F.3d at 466 (noting that the district court was correct to conclude that identifying class members "with sole reliance on individual affidavits was equally sufficient to preclude certification" because of plaintiff's failure to meet Rule 23's ascertainability requirement).

The same concern of "mini-trials" on the merits that permeated <u>Marcus</u> and <u>Carrera</u> is present here. Defendant's CRM system does not track whether a client found Creditors Relief through Defendant's advertising efforts or a third-party vendor, <u>i.e.</u>, the client consented to be contacted by Creditors Relief, or Creditors Relief found the client through research into public UCC filings, <u>i.e.</u>, the client did not consent to be contacted. Accordingly, there are only three possible ways to determine class membership. First, impermissible mini-trials to determine the client's method of first contact by Defendant. Second, impermissible client affidavits that would result in class admission by clients' "say so" alone. Or, third, some far-reaching exploration of Creditors Relief's and its third-party vendors' documents and databases and comparison of those documents and databases to Defendant's CRM system in an attempt to separate the "consent clients" from the "no-consent clients." That would require (at least) tens of thousands of pages of document discovery and thousands of hours of work all based on a FAC that alleges that Defendant violated the TCPA as to Plaintiff because Plaintiff believes that he heard a "1-3 second pause" before being connected to a client representative and violated the TCPA as to "hundreds, if not thousands" of unknown (and unknowable) others because Plaintiff believes they exist.

4811-9523-1391.v1

## <u>CONCLUSION</u>

For the foregoing reasons, Defendant Creditors Relief, LLC respectfully requests this

Court deny certification of Plaintiff's proposed class.


Respectfully submitted,

**CHIESA SHAHINIAN & GIANTOMASI PC**
Attorneys for Defendant
Creditors Relief, LLC


August 9, 2019                           By: _____
                                              Lee Vartan


-22-

4811-9523-1391.v1