# EXHIBIT A

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MARIO RIVERO, <br><br> Plaintiff, <br><br> vs. <br><br> D'JAIS, LLC, a New Jersey corporation, <br><br> Defendant. | Civil Action No.: 18-12697 (FLW) (ZNQ) <br><br> **OPINION** |

**WOLFSON, Chief Judge:**

This matter comes before the Court on defendant D'Jais, LLC's ("Defendant" or "D'Jais") motion to dismiss the Complaint filed by plaintiff Mario Rivero ("Plaintiff" or "Rivero") pursuant to Federal Rule of Civil Procedure 12(b)(6). Rivero's claims arise out of numerous text messages D'Jais allegedly caused to be sent to Rivero in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, promoting D'Jais's bar, restaurant and nightclub. Because the Court concludes that Rivero has adequately stated a claim upon which relief can be granted, D'Jais's motion is denied.

I.  **FACTUAL BACKGROUND AND PROCEDURAL HISTORY[1]**

Rivero is a resident of New Jersey. First Amended Complaint ("Compl."), ¶ 15. Rivero alleges that D'Jais is a New Jersey limited liability company that operates as "a bar, restaurant, dance club and entertainment company" in Monmouth County, New Jersey, *id.* at ¶ 16, and that it operates the same type of venue in Ocean County, New Jersey. *Id.* at ¶ 19.

---

[1] As discussed below, for purposes of this 12(b)(6) motion, this Court accepts all of Rivero's factual allegations as true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

1

Rivero avers that D'Jais caused numerous text messages to be sent to him, from at least December 23, 2017 to May 11, 2018, advertising events and drink prices at D'Jais. *Id.* at ¶¶ 20 – 22. Rivero further avers that he never consented to allow D'Jais to contact him by text message using an automatic telephone dialing system. *Id.* at ¶ 23. Rivero notes that some of the alleged text messages included hyperlinks to D'Jais's website. *Id.* at ¶¶ 27 – 30. Finally, Rivero alleges that the language of the text messages was impersonal and generic and did not include the name of the intended recipient, indicating that they were not written with a particular recipient in mind, *id.* at ¶¶ 35 – 36, and that the text messages were sent, not from an ordinary telephone number, but rather a five-digit "short code," which allows text message to be sent in large volumes. *Id.* at ¶¶ 37 – 38.

On August 13, 2018, Rivero filed this suit as a putative class action. On January 29, 2019, Rivero filed his First Amended Complaint, alleging both negligent and willful violations of the TCPA by D'Jais, but bringing those claims only on his own behalf. *Id.* at ¶¶ 42 – 49. The parties agreed to a stipulation of facts, and, on February 19, 2019, D'Jais moved to dismiss with prejudice for failure to state a claim upon which relief can be granted.

## II. **LEGAL STANDARD**

Under Fed. R. Civ. P. 12(b)(6), a complaint may be dismissed for "[f]ailure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When reviewing a motion to dismiss on the pleadings, courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quotations omitted). Under this standard, the factual allegations set forth in a complaint "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Indeed, "the tenet that a court must accept as true all

of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[A] complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009).

However, Rule 12(b)(6) only requires a "short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. The complaint must include "enough factual matter (taken as true) to suggest the required element. This does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Phillips*, 515 F.3d at 234 (citation and quotations omitted); *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013) ("[A] claimant does not have to set out in detail the facts upon which he bases his claim. The pleading standard is not akin to a probability requirement; to survive a motion to dismiss, a complaint merely has to state a plausible claim for relief." (citation and quotations omitted)).

Under the current pleading regime, when a court considers a dismissal motion, three sequential steps must be taken: first, "it must take note of the elements the plaintiff must plead to state a claim." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quotations omitted). Next, the court "should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* (quotations omitted). Lastly, "when there are well-pleaded factual allegations, the court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* (quotations and brackets omitted).

3

## III. DISCUSSION

D'Jais moves to dismiss on the basis that Rivero has failed to adequately plead that D'Jais used an ATDS to send him text messages, as is required by the TPCA, because he has not alleged facts indicating that the device randomly or sequentially generated the number it dialed. Alternatively, D'Jais argues that, if this Court allows Rivero's suit to proceed, it should at least dismiss Count II, which alleges a knowing or willful violation of the TCPA. For the reasons that follow, I find these arguments unavailing.

### A. The TCPA

The TCPA provides that it is "unlawful for any person within the United States . . . to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system . . . to any telephone number assigned to a . . . cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii). "A text message to a cellular telephone, it is undisputed, qualifies as a 'call' within the compass of § 227(b)(1)(A)(iii)." *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 667 (2016); *see also Gager v. Dell Financial Services, LLC*, 727 F.3d 265, 269 n.2 (3d Cir. 2013). "The term 'automatic telephone dialing system' means equipment which has the capacity–(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1).

The FCC has regulatory authority under the TCPA. 47 U.S.C. § 227(b)(2). As is relevant here, the FCC has exercised this authority to address the statutory definition of the term "automatic telephone dialing system" ("ATDS") on four occasions. *See Wilson v. Quest Diagnostics Inc.*, No. 18-11960, 2018 WL 6600096, at *2 (D.N.J. Dec. 17, 2018) (summarizing the rulings). The four occasions were: *In re Rules and Regulations Implementing the Telephone Consumer Protection*

4

*Act of 1991*, 18 FCC Rcd. 14014, 14093 ¶ 133 (2003) (the "2003 Order") (predictive dialers, i.e. equipment that can make calls from lists of phone numbers without human intervention, are ATDSs); *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 FCC Rcd. 559, 566 ¶ 12 (2008) (the "2008 Order") (affirming the 2003 Order); *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 27 FCC Rcd. 15391, 15392 ¶ 2 n.5 (2012) (the "2012 Order") ("any equipment that has the specified *capacity* to generate numbers and dial them without human intervention regardless of whether the numbers called are randomly or sequentially generated or come from calling lists" is an ATDS (citing the 2003 Order)); and *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30 FCC Rcd. 7961, 7974 ¶ 16 (2015) (the "2015 Order") ("capacity" within § 227(a)(1) includes not only "present ability" but also "potential functionality"). However, the D.C. Circuit set aside the portion of the 2015 Order that addressed the definition of an ATDS, because it found that the FCC's definition was arbitrary and capricious in that it would categorize all smartphones as ATDSs and thus subject most Americans to liability under the TCPA. *ACA International v. FCC*, 885 F.3d 687, 698-99 (D.C. Cir. 2018).

After *ACA International*, the Third Circuit decided *Dominguez on Behalf of Himself v. Yahoo, Inc.*, 894 F.3d 116 (3d Cir. 2018), which involved a plaintiff who had acquired a telephone number that had previously belonged to a person who had subscribed to receive a text message alert for each email received by that person's Yahoo account. *Id.* at 117. The Third Circuit affirmed the district court's grant of summary judgment to Yahoo, even though the plaintiff had received over 27,000 text messages from Yahoo, holding that, in order violate the TCPA, a device must have the "present capacity to function as an [ATDS] by generating random or sequential telephone

5

numbers and dialing those numbers." *Id.* at 121.[2] The Second Circuit appears to have taken a similar position as the Third Circuit. *See King v. Time Warner Cable Inc.*, 894 F.3d 473 (2d Cir. 2018).

### B. D'Jais's Misunderstanding of the TCPA

As an initial matter, I must address D'Jais's interpretation of how the Third Circuit defined ATDS in *Dominguez*. According to D'Jais, "in the Third Circuit, a device is only an ATDS if it has the present capability to generate random or sequential numbers, *and* then messages those numbers." *Id.* at p. 12 (emphasis in original). In fact, under *Dominguez*, a device must only have the capacity to generate random or sequential numbers and to dial those numbers and then must call or text a cellular telephone's number, *though not necessarily one that was randomly or sequentially generated*, without the permission of the owner of the recipient number, for a violation of TCPA to occur.

Indeed, D'Jais's interpretation of the TCPA is inconsistent with the statute's plain text. The statute refers to making calls with equipment that has the capacity to generate or store random or sequential numbers and to call those numbers, not to calling numbers that have been generated in a particular manner. *See* 47 U.S.C. § 227(b)(1)(A)(iii). Furthermore, as Rivero argues in his opposition to D'Jais's motion, interpreting the TCPA to ban only calls made to randomly or

---

[2] Subsequently, within the District of New Jersey, a divide has emerged among judges over whether *ACA International* and *Dominguez* necessarily invalidated the FCC's previous orders, in addition to the 2015 Order, in terms of the definition of an ATDS. *Compare Fleming v. Associated Credit Servs.*, 342 F.Supp.3d 563, 574 (D.N.J. 2018) ("I hold that when the D.C. Circuit vacated the 2015 FCC Declaratory Ruling it also necessarily set aside the parts of the previous 2003 and 2008 FCC Orders that ruled that a predictive dialer was impermissible under the TCPA.") *with Wilson v. Quest Diagnostics Inc.*, No. 18-11960, 2018 WL 6600096, at *3 (D.N.J. Dec. 17, 2018) ("[T]he court in *ACA International* only struck down the *expanded interpretation* in the 2015 Order as unreasonable," (emphasis in original) so predicative dialers are still ATDSs under binding precedent.).

6

sequentially generated numbers, rather than calls made with equipment that can randomly or sequentially generate numbers, would make the TCPA's exception for consent largely pointless, because it would be exceedingly unlikely that a business would ever randomly call a consumer who had consented to receive calls from that particular business.

Nonetheless, D'Jais argues that *Dominguez* compels the conclusion that a device must actually have dialed a randomly or sequentially generated phone number in order for it to have been an ATDS.[3] As support, D'Jais uses a quotation from *Dominguez* which refers to the "key factual question" as "whether the [device] functioned as an autodialer [i.e., an ATDS] by randomly or sequentially generating telephone numbers, and dialing those numbers." Def.'s Brief, p. 11 (citing *Dominguez*, 894 F.3d at 121). This argument is mistaken. Earlier in its opinion, the *Dominguez* court framed the issue this way:

> The decision in *ACA International* has narrowed the scope of this appeal. In light of the D.C. Circuit's holding, we interpret the statutory definition of an autodialer as we did prior to the issuance of 2015 Declaratory Ruling. Dominguez can no longer rely on his argument that the Email SMS Service had the latent or potential capacity to function as autodialer. The only remaining question, then, is whether Dominguez provided evidence to show that the Email SMS Service had the present capacity to function as autodialer. 894 F.3d at 119 (footnote omitted).

In other words, the "key factual question" to which the Third Circuit alluded later in its opinion mattered because it would show whether the device had the present capacity to generate random or sequential numbers and then call them, not because the statutory requirement was, in fact,

---

[3] D'Jais also cites a statement from an earlier opinion by the Third Circuit in the same matter, *Dominguez v. Yahoo, Inc.*, 629 F.Appx. 369, 373 n.2 (3d Cir. 2015), for the proposition that the Third Circuit "expressly rejected any contention that the FCC interpreted the term ATDS to include devices that could not generate random or sequential numbers, and then dial those numbers." Def.'s Br., p. 9. This statement is largely irrelevant to the present motion, because Rivero alleges that D'Jais caused texts to be sent to him using a device that could, in fact, generate random or sequential numbers. Additionally, the significance of this earlier opinion is questionable, since, as D'Jais acknowledges, it predates *ACA International* and is non-precedential.

7

randomly or sequentially generating and then calling the number in question. Moreover, because the plaintiff in *Dominguez* did not allege that Yahoo had generated his number randomly or sequentially, *see id.* at 117, the fact that the Third Circuit even reached the question of the device's capacity indicates that a device can be used as an ATDS without randomly or sequentially generating the number in question. Tellingly, in upholding the district court's decision to exclude an expert witness, the Third Circuit noted: "Notably absent [from the expert's declaration], however, is any explanation of how the Email SMS System actually did or *could* generate random telephone numbers to dial." *Id.* at 120 (emphasis added).

Furthermore, D'Jais does not acknowledge that *ACA International* recognized "the Commission's unchallenged assumption that a call made with a device having the capacity to function as an autodialer can violate the statute even if autodialer features are not used to make the call." 885 F.3d at 695.[4] Because *Dominguez* followed the holding of *ACA International*, 894 F.3d at 119, the Third Circuit seemed to accept what the D.C. Circuit called the FCC's "unchallenged assumption." Though the Third Circuit stated that "[t]he D.C. Circuit . . . set aside the FCC's 2015 Declaratory Ruling," *id.* at 119, the D.C. Circuit only set aside, as is relevant here, the FCC's interpretation of "capacity" to include "potential functionalities" as opposed to only "present ability," *ACA International*, 885 F.3d at 695, thus not necessarily setting aside all of the reasoning that went into the FCC's decision. *See id.* at 692 ("We set aside . . . the Commission's effort to clarify the types of calling equipment that fall within the TCPA's restrictions. The Commission's understanding would appear to subject ordinary calls from any conventional smartphone to the

---

[4] I understand this assumption to reflect an interpretation of the word "using" in § 227(b)(1)(A)(iii), in that the FCC assumed a person can "use" an ATDS to make a call, even if the person is not using the device's number-generation feature.

Act's coverage, an unreasonably expansive interpretation of the statute.").[5] In other words, the D.C. Circuit's opinion, endorsed by the Third Circuit, invalidated the FCC's interpretation of "capacity" in § 227(a)(1), by limiting it to present, rather than potential, capacity, not the FCC's interpretation of "using" in § 227(b)(1)(A)(iii), which assumed that a call made be made "using" an ATDS, even if the ATDS's number-generation feature is not used to make that particular call. Moreover, the D.C. Circuit's concern that the FCC's interpretation of the TCPA would include all smartphones within the definition of an ATDS was resolved by rejecting the FCC's interpretation of "capacity," without setting aside its interpretation of "using." Thus, I agree with Rivero that "*Dominguez* merely addressed present capacity vs. potential and latent capacity and did not impose a requirement that the autodialer functionality be employed to transmit the text messages at issue in the litigation." Pl.'s Brief, p. 10.

Next, D'Jais presents a hypothetical about a bar owner named Harry sending a group text message to two customers encouraging them to come to a happy hour and argues that, under Rivero's interpretation of the TCPA, Harry would be, absurdly, liable to those two customers. However, this argument is erroneous for the simple reason that, because most people's phones are not equipped with software to generate random or sequential phone numbers, Harry's phone would most likely not be an ATDS for purposes of the TCPA. Under *Dominguez*, it is the "present capacity," not the "potential or latent capacity," of the device that determines whether it is an ATDS. 894 F.3d at 119. Thus, even if Harry had a smartphone that could be loaded with software to generate random or sequential numbers, the phone would not be an ATDS unless Harry actually loaded it with such software. Additionally, Harry's text message would have come from an

---

[5] Significantly, the D.C. Circuit did not set aside the entire 2015 declaratory ruling; in fact, the D.C. Circuit explicitly upheld two aspects of the ruling, while setting aside two others (one of which was the FCC's interpretation of "capacity"). *See ACA International*, 885 F.3d at 692.

9

ordinary phone number, not a "short code," and, according to the hypothetical, did not include a hyperlink to his bar's website, so the potential plaintiffs in that case would not be able to allege all of the facts that Rivero has alleged here. Furthermore, the hypothetical involved only a single text message, rather than many text messages, thereby making it even more difficult for any of the recipients of Harry's text to allege, plausibly, that the text had come from an ATDS. Thus, in addition to failing at the summary judgment stage, a lawsuit brought by one of the recipients of Harry's group text message might not even survive a 12(b)(6) motion.[6]

Finally, in its reply brief, D'Jais argues alternatively that, if the Court allows the case to proceed on the theory that a call can be made "using" an ATDS even if the device's number-generation feature is not used to make the call in question—as the Court is—the Court should at least dismiss Count II of Rivero's First Amended Complaint, which alleges knowing or willful violations of the TCPA. I disagree. D'Jais cites no authority for this argument and does not explain why the Court take should take this position. Furthermore, at this point, before discovery, neither Rivero nor the Court has any evidence as to D'Jais's level of awareness of the capabilities of the system that sent the text messages Rivero allegedly received. Indeed, if there is evidence that D'Jais knew that the system had the capability to send text messages to randomly or sequentially

---

[6] In its reply brief, D'Jais also points to the split within this Court, discussed above, over whether a predictive dialer, i.e. a device that makes phone calls using a database of stored phone numbers without a human manually dialing each number, can qualify as ATDS, even if the device lacks the capacity to call randomly or sequentially generated numbers. *Compare Fleming v. Associated Credit Servs.*, 342 F.Supp.3d 563 (D.N.J. 2018) (a predictive dialer is not an ATDS), *with Wilson v. Quest Diagnostics Inc.*, No. 18-11960, 2018 WL 6600096 (D.N.J. Dec. 17, 2018) (a predictive dialer is an ATDS). Furthermore, D'Jais argues that *Fleming*, rather than *Wilson*, correctly interpreted *Dominguez* and *ACA International* and that, under *Fleming*, Rivero should not be allowed to proceed with allegations that can, at most, only give rise to an inference of the use of a predictive dialer. This argument is flawed. At this time, it is unnecessary for me to decide between these two holdings, because Rivero does not allege that D'Jais used a predictive dialer but rather alleges that D'Jais's device could randomly or sequentially generate numbers and, as discussed below, has adequately pled that allegation.

generated numbers and that the system was sending text messages to Rivero's number, even if his number had not been randomly or sequentially generated, then D'Jais may be liable for a knowing violation of the TCPA.

### C. The Sufficiency of Rivero's Allegations

D'Jais argues that Rivero's factual allegations are insufficient under *Iqbal*. I disagree. In fact, D'Jais's assessment of the sufficiency of Rivero's factual allegations relies on its misunderstanding of the TCPA. Specifically, D'Jais argues: "Plaintiff does not allege that he is not a customer of D'Jais . . . Plaintiff does not plead that he has never heard of D'Jais or that they are strangers . . . Plaintiff . . . has failed to plead any facts that would suggest D'Jais obtained his phone number through random or sequential number generation." Def.'s Brief, p. 16. However, because, under the TCPA, Rivero must only allege that D'Jais caused texts to be sent to him using a device that could generate random or sequential numbers and then dial them, rather than that the device generated his number randomly or sequentially and then dialed it, it is unnecessary for Rivero to allege grounds for inferring that D'Jais generated his number randomly or sequentially.

In his briefing, Rivero has emphasized that he allegedly received text messages that promoted D'Jais and that these text messages were generic and impersonal, came from a "short code," and occasionally included hyperlinks to D'Jais's website.[7] Furthermore, Rivero has also alleged that the text messages were numerous and that he received them over a period of months. These factual allegations raise Rivero's claims to the level of plausibility, because it is plausible that a business that uses mass text messages to promote itself would use equipment that has the capacity to generate random or sequential numbers and text those numbers, even if a particular

---

[7] Because Rivero's First Amended Complaint sets forth adequate allegations to survive D'Jais's 12(b)(6) motion, I find it unnecessary to consider the parties' stipulation.

11

recipient's phone number were not generated randomly or sequentially. Furthermore, in terms of Count II, which alleges knowing or willful violations of the TCPA, it is plausible, based on Rivero's factual allegations, that D'Jais had such knowledge.[8] D'Jais is correct that, for purposes of proving Rivero's claims through a motion for summary judgment or at trial "[a] device's ability to simultaneously send a message to more than one (1) recipient has nothing to do with whether it has a present ability to generate random or sequential numbers, and then message those numbers," Def.'s Brief, p. 18. However, for the purposes of a motion to dismiss, the clear inference that, in this case, the texts messages that Rivero received were sent to many recipients, helps to raise Rivero's allegation that D'Jais used an ATDS to send him the text messages to the level of plausibility.

Moreover, D'Jais's citation to a recent opinion of this Court that discussed pleading the absence of a prior relationship as a part of a TCPA claim does not establish that Rivero has insufficiently pled the use of an ATDS. Specifically, D'Jais argues that this Court "required the litigants to plead '. . . additional factual information, such as the absence of a relationship between the parties and the random nature of the automation device.' . . . the Court required facts showing the random nature of the device and the lack of a relationship between the parties." Def.'s Reply Brief, p. 9 (quoting *Zemel v. CSC Holdings LLC*, No. 18-2340, 2018 WL 6242484, at *3 (D.N.J.

---

[8] Though decided in a different circuit and prior to *ACA International*, *In re Jiffy Lube Intern., Inc., Text Spam Litigation*, 847 F.Supp.2d 1253 (S.D. Cal. 2012) denied a motion to dismiss on similar grounds: "Plaintiffs have stated that they received a text message from an SMS short code and that the message was sent by a machine with the capacity to store or produce random telephone numbers. While additional factual details about the machines might be helpful, further facts are not required to move beyond the pleading stage." *Id.* at 1260. However, since *ACA International*, the Ninth Circuit has interpreted the TCPA differently than the Third Circuit has: "[A]n ATDS need not be able to use a random or sequential generator to store numbers—it suffices to merely have the capacity to 'store numbers to be called' and 'to dial such numbers automatically.'" *Duguid v. Facebook, Inc.*, 926 F.3d 1146, 1151 (9th Cir. 2019) (quoting *Marks v. Crunch San Diego, LLC*, 904 F.3d 1041, 1053 (9th Cir. 2018)).

12

Nov 29, 2018)) (first ellipsis in Defendant's brief). However, this quotation is misleadingly cherry-picked. In fact, in the same paragraph, *Zemel* approvingly cites *Jiffy Lube*, *supra*, "finding the complaint sufficient when plaintiffs stated that they 'received a text message from an SMS short code and that the message was sent by a machine with the capacity to store or produce random telephone numbers.'" *Zemel*, 2018 WL 6242484, at *3 (quoting *Jiffy Lube*, 847 F.Supp.2d at 1260). Thus, *Zemel* actually supports the proposition that the plaintiff does not necessarily have to plead the lack of a relationship with the defendant, if the plaintiff pleads other indicia of the use of an ATDS, such as the use of a "short code."

## IV.   CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is **DENIED**.


Date: September 30, 2019

/s/ Freda L. Wolfson
Hon. Freda L. Wolfson
U.S. Chief District Judge